**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **JOSE ROBERTO MERINO QUEVEDO,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No.: PWG-14-734** |
| | * | |
| **HBJ, INC.,** | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff filed this action against his former employer seeking damages for its alleged failure to pay proper overtime wages under the FLSA and two related Maryland statutes. Before the employer answered the complaint, the parties jointly moved for court approval of the settlement agreement they have executed. I find the net amount Quevedo is to receive to be fair and reasonable in light of the facts of this case. However, because Quevedo has not provided sufficient information for me to determine the reasonableness of the attorneys' fees, I will ask Plaintiff to supplement the filings before I approve the agreement.[1]

### I. BACKGROUND

Plaintiff Jose Roberto Merino Quevedo stocked shelves and performed similar tasks for Defendant HBJ, Inc. ("HBJ") from October 2007 until January 13, 2014. Compl. ¶ 8. He

---

[1] I have reviewed carefully the Renewed Joint Motion for Approval of Settlement and Dismissal, ECF No. 8, the accompanying Joint Memorandum and the parties' Settlement Agreement, ECF No. 8-1, as well as the Complaint, ECF No. 1. A hearing is unnecessary because the issues are presented adequately in the filings. *See* Loc. R. 105.6 (D. Md. Jul. 2014). The parties filed their Joint Memorandum and the Settlement Agreement as one document, rather than filing the Settlement Agreement as an attachment. Pages 1–7 of ECF No. 8-1 contain the Joint Memorandum and pages 9–12 contain the Settlement Agreement.

worked an average of fifty-seven hours per week and was paid between $7.50 and $9.50 per hour. *Id.* ¶¶ 10–13. The parties stipulate that "HBJ paid Quevedo at his regular hourly rate for all hours worked, including overtime hours." Joint Mem. 1 (citing Compl. ¶ 19).

Quevedo filed his four-count Complaint in this Court on March 12, 2014. *See* Compl. The complaint alleges (1) violations of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430; (2) violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Lab. & Empl. § 3-305(c); and (3) violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201–219. The complaint seeks damages and injunctive relief for the FLSA violations. According to Quevedo's complaint, he is due back pay in the amount of $3,071.25 for 2007–08, $12,168.00 for 2009–2012, and $3,334.50 for 2013–2014. Compl. ¶¶ 17–19. In light of the documents informally exchanged, the parties agree that a two-year statute of limitations applies, and they estimate that the maximum Quevedo could receive, if the doctrine of equitable tolling does not apply, is closer to $5,830.37. Joint Mem. 1–3.

Shortly before HBJ's answer was due, I granted the parties' joint motion for additional time to discuss settlement, ECF No. 5. On April 24, 2014, the parties filed their first Joint Motion to Approve Settlement, ECF No. 6. I denied the motion without prejudice because it did not provide enough factual detail and analysis for me to scrutinize the settlement for fairness. Ltr. Order, ECF No. 7. On May 14, 2014, the parties filed their renewed motion, along with their Joint Memorandum and their Settlement Agreement.

The Settlement Agreement contains a general release of HBJ's liability for "all matters in any way related to [Quevedo's] employment," Settlement Agr. § 1.01, Joint Mot. Ex. A, and a confidentiality clause restricting disclosure of the existence of the settlement, *id.* § 3.02.

Additionally, it does not require HBJ to admit wrongdoing, thus avoiding an award of attorneys' fees and costs to Quevedo under 29 U.S.C. § 216(b) as a prevailing party, *id.* § 3.03, and expressly waives Quevedo's right to petition for attorneys' fees under § 216(b), *id.* § 1.02. The $12,000 global settlement amount is to be divided as follows: (1) $7,544.25 to Quevedo for unpaid overtime and "other damages," and (2) $4,000.00 for Quevedo's attorneys' fees, *id.* § 2, which were calculated as one-third of the global settlement offer pursuant to a contingent-fee arraignment, plus $455.75 in costs, *see* Joint Mem. 5–6.

## II.   DISCUSSION

### A.  FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlements are an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable

resolution of a *bona fide* dispute over FLSA provisions," and a court must consider (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement.  *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute."  *Lynn's Food Stores*, 679 F.2d at 1354.

### B. *Bona Fide* Dispute

The parties assert that a *bona fide* dispute exists as to the amount of back pay owed to Quevedo.  Joint Mem. 3–4.  In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement.  *See Lomascolo*, 2009 WL 3094955, at *16–17.  Quevedo was paid by check for the first forty hours worked each week, and with cash for any additional hours worked.  Joint Mem. 1–2.  While Quevedo believes he is entitled to the amount of back pay sought in the complaint, HBJ maintains that its weekly cash payments to Quevedo "wipe out any back pay owed to [him]."  *Id.* at 4.  Additionally, Quevedo believes that the doctrine of equitable tolling should entitle him to recover back pay owed to him as far back as 2007, while HBJ contends that the applicable two-year statute of limitations limits Quevedo's recovery to back pay owed to the two years before Plaintiff filed his Complaint.  *Id.* at 3–4. Therefore, this case presents *bona fide* factual disputes as to whether Quevedo was paid for his overtime; if so, whether he was paid the proper amount; and if not, how much he may recover.

4

### C.  Fairness & Reasonableness

In finding this settlement fair and reasonable, I must evaluate several factors, including: "'(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.'"  *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

First, although discovery had not begun, the parties represent that in lieu of formal discovery, they informally exchanged documents such as "HBJ's internal time records."  Joint Mem. 4, 6.  By avoiding formal discovery, resources that otherwise would have been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced.  The total proposed settlement, exclusive of attorneys' fees and costs, would compensate Quevedo for approximately 41% of the back pay sought in his complaint. Settlement Agr. § 2; Compl. ¶ 38.  However, based on the informal discovery exchanged and Defendant's view on the accrual of the statute of limitations, Defendant argues that even if it did not pay Quevedo in cash for his overtime, Quevedo's recovery would be capped at $5,830.37. Joint Mem. 4.  Under the proposed settlement, he will receive about 129% of this estimate.  *See id.* (Quevedo to receive $7,544.25 total); Settlement Agr. § 2.  Counsel for each party, with their collective forty years of employment law experience, believe the compromise is fair and reasonable and was reached after "intense negotiations."  Joint Mem. 5.

The second, fourth, fifth, and sixth factors can be analyzed together.  Although the case may be resolved early, the settlement will release only Quevedo's claims and will not affect

other employees. *See generally* Manual for Complex Litigation (Fourth) § 32.461 (2004) ("the judge should ensure that members of the proposed class are not prejudiced"). Next, the complexity of the case is shown through the fact-intensive disputes surrounding the cash paid to Quevedo, the difficulty of establishing whether he was paid properly in light of the dearth of records available without the costs of formal discovery, and the equitable tolling theory advanced by Quevedo. Joint Mem. 4–5. Essentially, it is possible that the cash paid was sufficient to moot Quevedo's claims entirely. *Id.* at 4. And, as explained previously, Quevedo's counsel has practiced employment law for nearly fifteen years and HBJ's counsel for twenty-five years. *Id.* at 5. Informed by their experience, counsel assert that the settlement is fair and reasonable. *Id.*

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint. *See* Settlement Agr. § 1.01. A general release like this can render the agreement unreasonable. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Fanklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to any non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). As explained above, Quevedo will receive $7,544.25 as a compromise between HBJ's position (that it adequately compensated Quevedo for all time worked), Joint Mem. 4, and Plaintiff's position

6

(that he is owed $18,573.75), Compl. ¶ 38.  This compromise fairly compensates Quevedo for the general release executed.

The Settlement Agreement provides that "[n]othing in this Agreement (or the entering into this Agreement) shall be construed to be an admission of wrongdoing by any Party hereto." Settlement Agr. § 3.03.  In a recent opinion, I acknowledged that some courts view settlements without a stipulated judgment as *per se* unreasonable.  *See Duprey v. Scotts Co. LLC*, ---- F. Supp. 2d ----, 2014 WL 2174751, at *5 (D. Md. May 23, 2014) (citing, *inter alia*, *Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)).  However, in the absence of clear binding authority to the contrary, a plaintiff "is permitted to agree that—in light of the *bona fide* disputes as to liability and the costs and risks of proceeding on the merits—accepting a lesser amount than he ultimately could receive at trial is reasonable."  *Id.*  Quevedo's settlement, like that in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*."  *Id.*  The amount provided in consideration for Quevedo's release is fair and reasonable in light of the particular circumstances of this case, including his recognition of the strong defenses asserted by HBJ, as explained above.[2]

---

[2] As explained above, the Settlement Agreement contains a confidentiality clause restricting disclosure of the settlement agreement.  Settlement Agr. §§ 3.02, 3.04.  A confidentiality clause in an FLSA settlement agreement is "not permitted without compelling reasons" to justify the confidentiality.  *Salamone v. Balt. Diamond Exch., Inc.*, No. JKB-14-1507, 2014 WL 2930788, at *1 (D. Md. June 27, 2014) (citing *Carpenter v. Colonial Mgmt. Grp., LP*, No. JKB-12-686, 2012 WL 2992490, at *2 (D. Md. July 19, 2012)).  In *Carpenter*, this Court denied a motion to approve an FLSA settlement agreement because it contained a confidentiality provision "without any argument to support its inclusion," and it was accompanied by a motion to seal that "failed to establish a basis for sealing."  2012 WL 2992490, at *2.  The court held that the confidentiality provision, included as part of an agreement the parties sought to seal, "contravene[d] the important purposes of the [FLSA] and defeat[ed] both public and private efforts to enforce it."

Finally, there is no suggestion of fraud or collusion, and Quevedo's counsel represented him from the outset of the case.  Joint Mem. 9–10; *see Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").  Having considered these factors, I find that the settlement is fair and reasonable.  *See Saman*, 2013 WL 2949047, at *3; *Lomascolo*, 2009 WL 3094955, at *10.

### D.  Attorneys' Fees

#### 1. Contingent–Fee Arrangements and the FLSA

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness.  *Saman*, 2013 WL 2949047, at *6.  The attorneys' fees in this case are difficult to assess because Quevedo agreed to a contingent-fee arrangement providing counsel forty percent of the global settlement, which counsel reduced to one-third.  *See* Joint Mem. 5–6.

Notably, under 29 U.S.C. § 216(b), "'the wronged employee should receive his full wages *plus* the [liquidated damages] penalty without incurring any expense for legal fees or costs.'"  *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946) (emphasis added)); *see Robertson v. Alaska Juneau Gold Mining Co.*, 157 F.2d 876, 879 (9th Cir. 1946), *cert. granted in part, judgment modified*, 331 U.S. 793 (1947); *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947).  Thus, although contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases,[3] *see, e.g.*, *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 437 (D.

---

*Id.*  But, here, as in *Salamone*, "the Settlement Agreement is filed as a matter of public record," such that the confidentiality clause "is of no practical effect."  *See Salamone*, 2014 WL 2930788, at *1 (approving FLSA settlement agreement).  Therefore, the confidentiality clause does not make the settlement unreasonable, even if the clause itself might be unenforceable.  *See id.*

[3] Common-fund cases are where "'a litigant or a lawyer . . . recovers a common fund for the benefit of persons other than himself or his client [and] is entitled to a reasonable attorney's fee

Md. 1998) (citing authority from multiple circuits), a district court may abuse its discretion by granting attorneys' fees pursuant to a contingent-fee arrangement in an FLSA case, *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992) (concluding that "it was an abuse of discretion for the district court . . . to forgo the lodestar approach and to calculate reasonable attorney's fees by adopting instead the attorney's customary contingent-fee arrangement"); *Llora v. H. K. Research Corp.*, No. 96-1552, 1997 WL 693062, at *1 (4th Cir. Oct. 29, 1997) (concluding that "it was an abuse of discretion for the district court to award attorney's fees that equaled one-third of the judgment award without adequately explaining its reasoning for failing to use the lodestar amount"). This is because "permitting contractual waiver of . . . the right to minimum wage, overtime compensation, liquidated damages, and attorney's fees—would nullify the purposes of the [FLSA]." *Walthour v. Chipio Windshield Repair, LLC*, 944 F. Supp. 2d 1267, 1272 (N.D. Ga. 2013), *aff'd*, 745 F.3d 1326 (11th Cir. 2014), *cert. denied*, 134 S.Ct. 2886 (U.S. 2014). Therefore, to allow a contingent fee that distributes a portion of the damages award to the attorney, thereby allowing the employee effectively to waive both the statutorily-mandated attorneys' fees and the portion of her wages and liquidated damages allocated to attorneys' fees, would be an impermissible infringement on the statutory award to the employee. *See id.*; *see also O'Neil*, 324 U.S. at 706 & n.16.

Nonetheless, an attorneys' fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach. *See Silva*, 307 F. App'x at 351 ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately

---

from the fund as a whole.'" *US Airways, Inc. v. McCutchen*, ---- U.S. ----, 133 S. Ct. 1537, 1545 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."); *see also Pessoa v. Countrywide Home Loans, Inc.*, No. 06-1419, 2007 WL 1017577, at *3 (M.D. Fla. Apr. 2, 2007) ("In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fee.").

In this case, HBJ is to pay Quevedo $12,000, $7,544.25 of which will compensate Quevedo for his claims and $4,455.75 of which will compensate him for attorneys' fees and costs. Settlement Agr. § 2. At first blush, this agreement appears to distribute a portion of the statutory award to the employee, which would violate the principles of *O'Neil*. Although the filings could have made clearer that the award and fees were negotiated separately to comply with *O'Neil*, the parties appear to have reached the settlement amounts in an attempt to preserve the $7,544.25 compromise award to Quevedo in addition to $4,455.75 for attorneys' fees and costs. There is no evidence that Quevedo was offered $12,000 in damages, which he must split with his lawyer. Such an arrangement clearly would violate the objectives of *O'Neil*. *See Duprey*, 2014 WL 2174751, at *6. Thus, Amaya is receiving a reasonable amount in settlement, given his chances and recovery possibilities were the case to proceed to discovery and to trial, and has secured an additional amount for attorneys' fees, which is less than, but close to the amount he would have owed his attorney under the contingency-fee agreement. Therefore, I may approve the attorneys' fee award, provided that it is reasonable under the lodestar approach.

### 2. Lodestar

Under the lodestar approach, the Court multiplies "the number of hours reasonably expended . . . by a reasonable hourly rate" to achieve "an objective basis on which to make an

initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Lyle*, 954 F.2d at 988 (applying lodestar approach to FLSA cases).   Although Plaintiff cursorily listed the work his attorneys have done, *see* Joint Mem. 6, he has not identified the attorneys that worked on his case, the number of hours they worked, or their hourly rates. *See Travis v. Prime Lending*, No. 07-065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (stating that the plaintiff "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary").   Nor has he provided a basis for assessing the reasonableness of those rates under Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases.   Therefore, I will give Plaintiff until August 27, 2014 to supplement the record with this information.[4]

## III.    CONCLUSION

For the reasons explained above, the Renewed Joint Motion to Approve Settlement and to Dismiss, ECF No. 8, will be HELD IN ABEYANCE pending receipt and review of the attorneys' fees and costs supplement.   Once those filings are reviewed for reasonableness under the lodestar approach, I will issue a final decision.

Dated: <u>August 13, 2014</u>                                    <u>          /S/          </u>
                                                                Paul W. Grimm
                                                                United States District Judge

jwr

---

[4] For guidance in providing this information, counsel should review Chief Judge Chasanow's opinion in *Saman*, where the parties were required to provide the same supplement.  2013 WL 2949047, at *6–7.